This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41407**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GERALD MARCOS TRUJILLO a/k/a**
**GERALD M. TRUJILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Christopher G. Perez, District Court Judge**

Raúl Torrez, Attorney General
Peter James O'Connor, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** A jury found Defendant Gerald Trujillo guilty of two counts of criminal sexual penetration in the second degree (child age 13-18), pursuant to NMSA 1978, Section 30-9-11(E)(1) (2009), and two counts of criminal sexual contact of a minor in the second degree (person in position of authority), pursuant to NMSA 1978, Section 30-9-13(B)(2)(a) (2003). Defendant asks this Court to reverse his convictions on the basis that (1) prosecutors deliberately elicited testimony and commented on Defendant's

silence, (2) insufficient evidence was presented to support the convictions, and (3) he received ineffective assistance of counsel. We affirm.

**DISCUSSION**

**I.      Comments on Silence**

**{2}**      Defendant asserts that the State violated his Fifth Amendment right to remain silent by eliciting testimony from two witnesses on Defendant's silence, and then commenting on it during rebuttal closing argument. "[W]e review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence," *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852, and dispose of these arguments on the basis that the comments were not constitutionally protected. Defendant also asserts that the prosecutor made an additional comment during opening that implicated his decision not to testify. We conclude this comment was not fundamental error. *See State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61 ("When a defendant fails to object at trial to comments made by the prosecution about his or her silence, we review only for fundamental error.").

**{3}**      Turning first to the witnesses' comments, Defendant contends that the State violated his Fifth Amendment rights by (1) questioning Victim's mother (Mother) about whether Defendant ever made a statement regarding the allegations or denied the allegations; (2) asking the investigating detective whether he had made contact with Defendant, to which the detective answered "I did not"; and (3) referring to the detective's testimony during rebuttal closing argument, where the prosecutor stated,

> These kinds of crimes, they are hard to investigate, and there is not much to investigate. It comes down to the victim's statements. It comes down to the people that were close and their statements. Let's not forg[e]t, it wasn't just [Victim] that the detective tried to interview. He also interviewed [Mother]. He tried to get ahold of the Defendant."

All of the comments Defendant identifies on appeal, which were objected to at trial, relate to two facts: that Defendant (1) never made a statement to Mother denying the sexual abuse, and (2) never made a statement to police or investigators concerning the allegations.

**{4}**      As to the comments by Mother, the State notes she "is not law enforcement and was not attempting to elicit information in violation of Defendant's rights." We understand the State to argue that the Fifth Amendment does not apply to Defendant's interaction with Mother. Defendant has not addressed this point and has not offered any authority to suggest that his silence with respect to Mother was protected by the Fifth Amendment. To the extent Defendant argues that the problem lies with the prosecution's questioning of Mother, which, directly or indirectly, elicited testimony that Defendant had never denied the allegations, we acknowledge that such questioning is improper and prohibited by New Mexico's evidentiary rules. *See DeGraff*, 2006-NMSC-

011, ¶ 15; *State v. McDowell*, 2018-NMSC-008, ¶ 4, 411 P.3d 337 ("[A]s a matter of New Mexico evidentiary law, because silence is often too ambiguous to have great probative force and may be given improper weight by a jury, evidence of a defendant's silence generally is not admissible as proof of guilt." (internal quotation marks and citation omitted)). Nevertheless, Defendant does not assert on appeal that any of the testimony or statements at issue were improper as a matter of New Mexico evidentiary law. Based on the arguments presented for review, we conclude that statements by Mother regarding Defendant's failure to deny the allegations do not amount to a constitutional violation.

{5}     The second set of comments, which concern Defendant's failure to make a statement to police after Defendant had been informed of the accusations against him, implicate Defendant's pre-arrest, pre-*Miranda* silence. "[A] defendant's prearrest, pre-*Miranda* silence, *once invoked*, may not be admitted as substantive evidence of guilt by a prosecutor at trial." *State v. Costillo*, 2020-NMCA-051, ¶ 11, 475 P.3d 803 (emphasis added). But "if [the d]efendant did not invoke his Fifth Amendment privilege, the prosecutor's comments on [the d]efendant's silence were not constitutionally prohibited." *Id.* ¶ 13; *see also State v. Gutierrez*, 1995-NMCA-018, ¶ 8, 119 N.M. 618, 894 P.2d 395 ("As a general rule, the constitutional privilege against self-incrimination is available only if it is invoked as the ground for refusing to speak.").

{6}     The State observes that "there is no evidence that Defendant asserted a right to silence in any manner." Defendant argues that he "sufficiently demonstrated his intent not to speak and to invoke his right to remain silent" by declining to submit to the detective's request for an interview. The record indicates that "officers told [Defendant] about the nature of [Victim's] allegations the night the allegations were made but did not arrest [Defendant] or question him at that time." The detective later attempted to interview Defendant, but never made contact with him.

{7}     While "[n]o ritualistic formula" or "special combination of words" is required to invoke the right to silence, what *is* required is "an objection to a question *stated in language* that the propounder of the question may reasonably be expected to understand as an attempt to invoke the privilege." *Id.* (emphasis added) (alterations, internal quotation marks, and citation omitted). Defendant, however, used no words at all—he simply ignored the detective's request for an interview. *Cf. Gutierrez*, 1995-NMCA-018, ¶ 8. Defendant has not directed us to any authority indicating that such conduct, unaccompanied by a statement or other affirmative indication that he was attempting to assert his right to remain silent, is sufficient to invoke the privilege. *See Pickett Ranch, LLC v. Curry*, 2006-NMCA-082, ¶ 45, 140 N.M. 49, 139 P.3d 209 (stating that where no supporting authority for a proposition is cited, this Court may assume that no applicable or analogous authority exists). While we caution the State from commenting on a defendant's right to remain silent, under the standard articulated in *Costillo*, Defendant's conduct was not sufficient to invoke his Fifth Amendment privilege. *See Costillo*, 2020-NMCA-051, ¶¶ 11, 14 (holding that the defendant demonstrated his intent not to speak where he clearly stated that he did not wish to discuss the topic on which he was being questioned and continually asked to stop the interview).

**{8}**     Separately, Defendant also asserts that the prosecutor "primed the jury to expect a statement from [Defendant] and to consider his silence" when, during opening, the prosecutor stated to the jury, "[Y]ou heard [defense counsel] say that this is the place where people who are not guilty come to say that they're not guilty." Defense counsel did not object to this remark, and therefore, "we review only for fundamental error." *DeGraff*, 2006-NMSC-011, ¶ 21. "This review consists of two parts. We first determine whether any error occurred, i.e., whether the prosecutor commented on the defendant's protected silence. If such an error occurred, we then determine whether the error was fundamental." *Id.* "An error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted).

**{9}**     In context, the prosecutor's entire remarks were as follows:

> In voir dire you heard [defense counsel] say that this is the place where people who are not guilty come to say that they're not guilty. This is also the place where the State comes to meet its burden of proving someone guilty beyond a reasonable doubt. And that's exactly what we're gonna do before . . . you, ladies and gentlemen, over the next couple of days.

We are not persuaded that the prosecutor's brief opening remark amounts to a comment on Defendant's protected silence. The State was not emphasizing Defendant's decision not to testify or inviting the jury to infer that Defendant's silence is evidence of his guilt. *See DeGraff*, 2006-NMSC-011, ¶ 8 (stating that "[w]e evaluate the statement in context to determine the manifest intention that prompted the remarks" (internal quotation marks and citation omitted)). Rather, the prosecutor was paraphrasing defense counsel's own remarks.[1] Even if the prosecutor misquoted defense counsel, Defendant has not analyzed this comment within the fundamental error framework and has not demonstrated that the comment can be said to have been a "significant factor in deliberations." *Id.* ¶ 23. For all of these reasons, we conclude Defendant has not shown fundamental error.

## II.     Sufficiency of the Evidence

**{10}**     Defendant asserts that Victim's testimony accounts for the only direct evidence that he committed the relevant offenses and, in the absence of DNA evidence, is insufficient to support his convictions. Defendant further contends that the testimony of other witnesses did not independently corroborate Victim's testimony.

**{11}**     "[W]hen reviewing convictions to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction," we apply a

---

[1]Defense counsel stated during voir dire the day before, "This is the place you come when you're not guilty, and you're saying, I need a trial. I want my fellow citizens to listen to the evidence and make a decision, because I didn't do anything wrong, okay. So that goes to, as well, this idea of some people thinking something must have happened for him to be here."

substantial evidence standard. *State v. Gutierrez*, 2007-NMSC-033, ¶ 26, 142 N.M. 1, 162 P.3d 156 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* (internal quotation marks and citation omitted). "We do not weigh the evidence, nor do we substitute our judgment for that of the factfinder so long as there is sufficient evidence to support the verdict." *Id.* (alteration, internal quotation marks, and citation omitted).

**{12}** In order to convict Defendant of criminal sexual penetration in the second degree, the State was required to prove that (1) Defendant "caused the insertion, to any extent, of a tongue into the vagina/vulva of [Victim]"; (2) Defendant "used physical force or physical violence"; and (3) Victim was at least thirteen but less than eighteen years old. *See* § 30-9-11(E)(1). To convict Defendant of criminal sexual contact of a minor in the second degree, the State was required to prove that (1) Defendant "touched or applied force to the unclothed mons veneris or vulva," and "unclothed breast" of Victim; (2) Defendant "was a household member AND used this position of authority to coerce [Victim] to submit to sexual contact"; and (3) Victim was at least thirteen but less than eighteen years old. *See* § 30-9-13(B)(2)(a).

**{13}** At trial, the State presented evidence that, at the time of the assaults, Defendant and Mother lived together along with Victim, who was Mother's daughter from a previous relationship. Victim testified that Defendant touched her in a sexual manner on four separate occasions and provided details of each occurrence that are consistent with the elements required to be proved for each conviction. Victim also testified that she underwent a sexual assault nurse examination and gave a forensic interview. The forensic scientist who tested the swabs collected during the examination also testified, as did the forensic interviewer who conducted the interview. The lead detective testified to the consistency of the various statements made by Victim.

**{14}** The evidence elicited from these witnesses was sufficient to allow the jury to convict Defendant of the charges against him. Notwithstanding Defendant's contrary assertion, Victim's testimony alone was sufficient to "justify a finding by any rational trier of fact that each element of the crime charged has been established." *See State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256 (internal quotation marks and citation omitted); *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 ("In prosecutions for criminal sexual penetration, the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony." (alterations, internal quotation marks, and citation omitted)); *State v. Soliz*, 1969-NMCA-043, ¶ 8, 80 N.M. 297, 454 P.2d 779 ("[T]he testimony of a single witness is sufficient evidence for a conviction.").

**{15}** Defendant also asserts that Victim's testimony at trial was inconsistent with prior statements she had made regarding the abuse. These perceived inconsistencies, however, were explored by defense counsel on cross-examination. Where a victim's "testimony may have been to some degree impeached, it [is] nonetheless in the province of the jury as factfinder to decide whether to believe the [v]ictim. . . . We will

not disturb that determination." *Nichols*, 2006-NMCA-017, ¶ 11. Based on the evidence of record, we conclude the State presented sufficient evidence to support Defendant's four convictions.

### III.     Ineffective Assistance of Counsel

{16}     Defendant asserts that he received ineffective assistance of counsel on a number of fronts. Specifically, Defendant contends that his attorney (1) failed to move for acquittal pretrial; (2) failed to file unspecified pretrial motions; (3) failed to "raise and object to the prejudice of the district court"; (4) failed "to object to the testimony of witnesses that did not [specifically] relate to the . . . charged [conduct]"; (5) failed "to properly conduct voir dire"; (6) failed "to object to prosecutorial prejudice"; (7) failed "to object to expert testimony"; and (8) failed "to fully represent [Defendant] and maintain trust in the [attorney-client] relationship" during pretrial plea bargaining.

{17}     "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Hunter*, 2006-NMSC-043, ¶ 12, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Gutierrez*, 2021-NMSC-008, ¶ 78, 482 P.3d 700 (internal quotation marks and citation omitted). "Counsel's performance is deficient if it fell below an objective standard of reasonableness." *Hunter*, 2006-NMSC-043, ¶ 13. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable . . . assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

{18}     As support for his contentions, Defendant points to instances in the pretrial record where defense counsel moved for a continuance based on a concern that she was providing ineffective assistance of counsel and raised concerns regarding her lack of preparation. Defendant also points to a breakdown in communications surrounding plea offers that he received and subsequently rejected. The district court found that Defendant's, rather than defense counsel's, behavior and lack of participation in preparing for trial resulted in defense counsel's request for a continuance. *See generally State v. Lamure*, 1992-NMCA-137, ¶¶ 6-7, 115 N.M. 61, 846 P.2d 1070 (finding that the defendant was not denied the effective assistance of counsel where the defendant's own misstatements to counsel resulted in the failure to discover relevant evidence). As for the remainder of Defendant's contentions, he has not established a prima facie case that defense counsel's actions fell below the standard of reasonableness or prejudiced the defense. Even so, Defendant may pursue his claims in habeas corpus proceedings. *See State v. Romero*, 2023-NMSC-014, ¶ 30, 533 P.3d 735 (noting our Supreme Court's "preference that ineffective assistance of counsel claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm.

**{20} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge, specially concurring**

**JANE B. YOHALEM, Judge, specially concurring**

**HENDERSON, Judge (specially concurring).**

**{21}** While I concur in the result due to this Court's holding in *Costillo*, 2020-NMCA-051, I write separately to emphasize my concerns regarding the development of New Mexico case law that allows the State to comment on a defendant's pre-arrest and pre-*Miranda* silence when the defendant does not affirmatively and explicitly invoke their Fifth Amendment right to remain silent. In *Costillo*, this Court relies on a plurality opinion from the United States Supreme Court for the proposition that a defendant must affirmatively alert law enforcement of their intent to remain silent under these circumstances. *Id.* ¶¶ 10-12; *see Salinas v. Texas*, 570 U.S. 178 (2013). As the dissent in *Salinas* notes, the ultimate question in this case is "whether the Fifth Amendment prohibits the prosecutor from eliciting and commenting upon the evidence about [a defendant's] silence." *Salinas*, 570 U.S. at 194 (Breyer, Ginsburg, Sotomayor, & Kagan, JJ, dissenting). The right to remain silent is a constitutional right that should not be used to prejudice a jury of a defendant's guilt. *See* U.S. Const. amend. V ("No person shall . . . be compelled in any criminal case to be a witness against [themselves]."); *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966) (holding that the "prosecution may not . . . use at trial *the fact that* [*the defendant*] *stood mute* or claimed [their] privilege in the face of accusation." (emphasis added)).[2]

**{22}** A defendant should be able to exercise their constitutional rights by declining to interview with law enforcement without the exercise of their rights being used against them at trial. We should not impose a burden on defendants to affirmatively reach out to law enforcement—the very entity that is trying to induce them to admit to a crime—and announce they are invoking their Fifth Amendment right to remain silent. *Salinas*, 570 U.S. at 195 (Breyer, Ginsburg, Sotomayor, & Kagan, JJ, dissenting) ("To permit a prosecutor to comment on a defendant's constitutionally protected silence would put that defendant in an impossible predicament . . . . If [they] answer[] the question, [they] may well reveal, for example, prejudicial facts, disreputable associates, or suspicious

---

[2]Defendant in this case did not raise a state constitutional challenge to the admission of these statements. Though no New Mexico case has interpreted the right against self-incrimination under the New Mexico Constitution to provide broader protections than its federal counterpart, *see State v. Rivas*, 2017-NMSC-022, ¶ 27, 398 P.3d 299 (stating that the federal and state protections against self-incrimination require that *Miranda* warnings be given), "our state constitution may provide greater protections than its federal counterpart," *State v. Granville*, 2006-NMCA-098, ¶ 10, 140 N.M. 345, 142 P.3d 933; *see* N.M. Const. art. II, § 15 ("No person shall be compelled to testify against [themselves] . . . .").

circumstances—even if [they are] innocent."). By not taking the narrowest view of *Salinas*, this Court has created a circumstance in which a defendant can be convicted for their silence, when the focus should be on the admissible substantive evidence of guilt.

**SHAMMARA H. HENDERSON, Judge**

**YOHALEM, Judge (specially concurring).**

**{23}** I concur and note my agreement with Judge Henderson's special concurrence.

**JANE B. YOHALEM, Judge**